1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF NICHOLAS A. PIMENTEL,        No. 1:18-cv-01203-DAD-EPG
     et al.,
12
                    Plaintiffs,
13
             v.                              ORDER GRANTING IN PART AND
14                                           DENYING IN PART DEFENDANTS'
     CITY OF CERES, et al.,                  MOTION FOR JUDGMENT ON THE
15                                           PLEADINGS
                    Defendants.
16                                           (Doc. No. 18)

17

18          This matter is before the court on defendants' motion for judgment on the pleadings, filed

19   on February 19, 2019.  (Doc. No. 18.)  On April 2, 2019, that motion came before the court for

20   hearing.  Attorney Mark Merin and Andrew Rausch appeared on behalf of plaintiffs, and attorney

21   Allen Christiansen appeared on behalf of defendants.  Having considered the parties' briefing,

22   and having heard from counsel, the court will grant defendants' motion in part.

23                                     **BACKGROUND**

24          In the complaint, plaintiffs allege as follows.  On or about Sunday, October 22, 2017, at

25   approximately 1:00 a.m., decedent Nicholas A. Pimentel and plaintiff Maria Pilar Rivera

26   occupied a vehicle, which was being driven by decedent Pimentel.  (Doc. No. 1 ("Compl.") at

27   ¶ 20.)  Decedent Pimentel allegedly drove through a "Stop" sign without completely coming to a

28   stop in an unincorporated area of Stanislaus County.  (*Id.* at ¶ 21.)  A law enforcement vehicle,

                                              1

located behind the Pimentel's vehicle, activated its flashing lights. (Doc. No. 22.) Because decedent Pimentel and plaintiff Rivera were within a few blocks of their residence, decedent Pimentel decided that he would attempt to reach his residence before pulling over. (*Id.* at ¶¶ 23–24.) The law enforcement vehicle was soon joined by other law enforcement vehicles, which were being driven by defendants Venn, Bays, and Doe defendants 1 through 25. (*Id.* at ¶¶ 25–26.) One of these vehicles, operated by defendant Doe 1, performed a Pursuit Intervention Technique ("PIT") maneuver on decedent Pimentel's vehicle, causing it to spin out. (*Id.* at ¶ 27.) Within moments of Pimentel's vehicle coming to a stop following the performance of the PIT maneuver, defendants Venn, Bays, and Does 1 through 25 began shooting at decedent Pimentel's vehicle, without prior warning, provocation, or any reasonable fear of risk or threat to themselves or to others. (*Id.* at ¶ 31.) Decedent Pimentel, who covered plaintiff Rivera within the vehicle to shield her from gunfire, was shot several times. (*Id.* at ¶¶ 32–33.) For his gunshot wounds, decedent Pimentel required immediate medical treatment, which was not immediately summoned or provided. (*Id.* at ¶¶ 38–39.) Following the shooting, and on information and belief, Does 1 through 25 made an unlawful entry into the home of decedent Pimentel and plaintiff Rivera and conducted an unlawful search for pretextual evidence that might justify the shooting. (*Id.* at ¶ 40.)

Plaintiffs filed their complaint on September 5, 2018, alleging a variety of civil rights violations. Defendants filed the instant motion for judgment on the pleadings on February 19, 2019. (Doc. No. 18.) Plaintiffs filed an opposition on March 5, 2019. (Doc. No. 19.) Defendants filed their reply on March 12, 2019. (Doc. No. 21.)

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

/////

2

The same legal standard applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d at 925 (noting that "judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law"). The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied or contradicted are assumed to be false. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005).

Courts have discretion both to grant a motion for judgment on the pleadings with leave to amend or to simply grant dismissal of causes of action rather than grant judgment as to them. *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted); *see also Pac. W. Grp. v. Real Time Sols., Inc.*, 321 Fed. App'x 566, 569 (9th Cir. 2008);[1] *Woodson v. California*, No. 2:15-cv-01206-MCE-CKD, 2016 WL 524870, at *2 (E.D. Cal. Feb. 10, 2016). Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (noting that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility").

**ANALYSIS**

Defendants move for judgment on the pleadings with respect to multiple causes of action set forth in plaintiffs' complaint. Each argument is addressed in turn below.

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

**A.  Judgment on Claims Against Ceres Police Department as Duplicative**

First, defendants move for judgment as to all causes of action brought against the Ceres Police Department.  (Doc. No. 18-1 at 11.)  They argue that the Ceres Police Department, as a sub-unit of a municipality, is not a "person" within the meaning of 42 U.S.C. § 1983.  (*Id.*)

In seeking dismissal, defendants cite to a concurring opinion in *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson, J., concurring), which stated that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983."  Defendants misconstrue this opinion.  In reaching that conclusion, the concurring opinion cited to the Ninth Circuit's decision *Hervey v. Estes*, 65 F.3d 784, 791–92 (9th Cir. 1995), which held that the Tacoma Narcotics Enforcement Team was not a "person" under § 1983 because it was an intergovernmental task force composed of several local, county, and state governmental entities, not a separate legal entity unto itself.  Because this case alleges claims against a police department, and not an intergovernmental association, the court finds *Hervey* to be of only limited guidance.  The concurring opinion in *Hervey* also relied upon an Eleventh Circuit decision, *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), which found that because the county sheriff's department lacked the capacity to be sued *under Alabama law*, it could not be sued under § 1983.  However, California law is to the contrary.  *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.").

More recently, the Ninth Circuit has permitted an action under § 1983 to proceed against a California sheriff's department in the face of the department's contention that it is not a "person" within the meaning of § 1983.  *Streit v. County of Los Angeles*, 236 F.3d 552, 564–65 (9th Cir. 2001) (affirming the district court's holding that when the Los Angeles County Sheriff's Department acts on behalf of the County, it is subject to liability under 42 U.S.C. § 1983); *see also Brewster v. Shasta County*, 275 F.3d 803, 807 (9th Cir. 2001) (finding that the Shasta County Sheriff is subject to liability under § 1983 after concluding that the "Shasta County Sheriff acts for the County, not the state, when investigating crime in the county").  The

4

1    undersigned concludes that these binding decisions control resolution of this issue, and therefore

2    will deny defendants' motion for judgment with respect to plaintiff's claims against the Ceres

3    Police Department.[2]

4    **B.      Dismissal of Claims Against Defendant Smith**

5            Next, defendants seek judgment on the pleadings as to all claims brought against Brent

6    Smith, the Ceres Chief of Police.  (Doc. No. 18-1 at 11–13.)  Defendants argue that the complaint

7    includes insufficient factual allegations to state a claim against defendant Smith in his individual

8    capacity.  (*Id.*)

9            "An official may be liable as a supervisor only if either (1) he or she was personally

10   involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the

11   supervisor's wrongful conduct and the constitutional violation."  *Felarca v. Birgeneau*, 891 F.3d

12   809, 819–20 (9th Cir. 2018) (internal quotation marks omitted); *see also Larez v. City of Los*

13   *Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual

14   capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of

15   constitutional rights").  "A supervisor can be liable in his individual capacity for his own culpable

16   action or inaction in the training, supervision, or control of his subordinates; for his acquiescence

17
18   [2]  The court acknowledges that numerous district courts within the Ninth Circuit have ruled that
     sheriffs and police departments are not "persons" within the meaning of § 1983, and have
     dismissed them as defendants on that basis.  *See, e.g.*, *Pearson v. Bakersfield Police Dep't*, No.
19   1:18-cv-0372-LJO-JLT, 2018 WL 3198065, at *5 (E.D. Cal. June 27, 2018); *Cartee v. Imperial*
     *Cty. Sheriff's Dep't*, No. 3:18-cv-00327-CAB-AGS, 2018 WL 2411742, at * 3 (S.D. Cal. May 29,
20   2018) ("[D]epartments of municipal entities are not 'persons' subject to suit under § 1983;
     therefore, a local law enforcement department (like the Imperial County Sheriff's Department) is
21   not a proper party.");  *Anderson v. Sacramento Police Dep't*, No. 2:16-cv-0527-TLN-GGH PS,
     2016 WL 3091162, at *4 (E.D. Cal. June 2, 2016) (same); *Gomez v. County of Fresno*, No. 1:16-
22   cv-00122-AWI-BAM, 2016 WL 8730877, at *2 (E.D. Cal. Feb. 12, 2016) (same); *Rodriguez v.*
     *County of Contra Costa*, No. C 13-02516 SBA, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5,
23   2013) (same); *Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI, 2013 WL 394522, at *13
     (E.D. Cal. Jan. 30, 2013) ("The Clovis Police Department is a municipal department within the
24   City of Clovis, and is not, as a general matter, considered a 'person' within the meaning of
     Section 1983.").  The undersigned has considered these decisions but comes, as have other district
25   courts, to the opposite conclusion and reaffirms its prior holding on this same issue as set forth in
26   *Payne v. County of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *2–5 (E.D.
     Cal. Dec. 14, 2018); *see also Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.17
27   (E.D. Cal. 2013); *Foster v. Berkeley Police Dep't*, No. C 10-3703 SI, 2011 WL 5861266, at *11
28   (N.D. Cal. Nov. 22, 2011).

in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Watkins*, 145 F.3d at 1093).

Here, the court can find no factual allegations in the operative complaint that, if true, would demonstrate that defendant Smith took any action with respect to plaintiffs. The allegations of the complaint do not involve any of Smith's conduct, but are instead premised solely on his role as a supervisor. For instance, the complaint alleges that Smith "knew or should have known that law enforcement officers under [his] command . . . were inadequately trained, supervised, or disciplined[.]" (Compl. at ¶ 51.) It then states that these "actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Nicholas A. Pimentel and Plaintiff Maria Pilar Rivera's rights secured by the Fourth and Fourteenth Amendments of the U.S. Constitution, or were wantonly or oppressively done." (*Id.* at ¶ 52.) Left unsaid is what defendant Smith did or failed to do. In the absent such allegations, the court will grant defendants' motion for judgment on the pleadings with respect to defendant Smith with leave to amend.

## C.     Dismissal of Certain Aspects of Plaintiffs' Familial Association Claims

Plaintiffs' fourth cause of action is brought by the decedent's son A.D.P. and the Estate of Diane L. Pimentel, and alleges violations of their rights to intimate association under the Fourteenth Amendment. (Compl. at ¶¶ 64–66.) Plaintiffs' fifth cause of action is brought by A.D.P., the Estate of Diane L. Pimentel, Maria Pilar Rivera, Summer Pimentel, Matthew Pimentel, Travis Pimentel, and Derek Pimentel, and alleges violations of their rights to intimate association under the First and Fourteenth Amendments. (*Id.* at ¶¶ 69–71.) Defendants argue that Estate of Diane L. Pimentel lacks standing, and that in any event they are entitled to judgment on

the pleadings in their favor with respect to the fifth cause of action in its entirety.  (Doc. No. 18-1 at 13–16.)  Each of these arguments is addressed below.

### 1.    Judgment as to the Fifth Cause of Action as Duplicative

First, defendants move for judgment as to plaintiffs' fifth cause of action.  (*Id.* at 14.) This claim alleges violation of plaintiffs' rights of association, companionship, and society under the First Amendment.  Defendants argue that this claim is duplicative of the fourth cause of action, which alleges violation of those same rights under the Fourteenth Amendment.  (*Id.*)

Defendants' argument is directly contrary to Ninth Circuit caselaw, which holds that familial association claims brought under the First Amendment are not duplicative of familial association claims brought under the due process clause of the Fourteenth Amendment.  In *Keates v. Koile*, 883 F.3d 1228, 1235–36 (9th Cir. 2018), the Ninth Circuit reviewed the two causes of action and concluded that "claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." In other words, there is nothing duplicative or superfluous about alleging familial association claims under each Amendment.  Although the undersigned is aware of at least one contrary district court ruling, the court finds that this case is no longer good law in light of the decision in *Keates*.  *See Reyes ex rel. Reyes v. City of Fresno*, No. CV F 13-0418 LJO SKO, 2013 WL 2147023, at *10 (E.D. Cal. May 15, 2013) (dismissing plaintiffs' First Amendment familial association claim as superfluous after finding that "[t]he weight of authorities indicates that the Fourteenth Amendment is the more precise source for familial association rather than the First Amendment").  Accordingly, defendants' motion seeking judgment on the pleadings with respect to plaintiffs' fifth cause of action will be denied.

### 2.    Judgment as to the Fourth and Fifth Causes of Action as Alleged by Plaintiff Estate of Diane L. Pimentel

Defendants argue next that plaintiff Estate of Diane L. Pimentel lacks standing to bring either cause of action.  (Doc. No. 18-1 at 14–15.)  According to the complaint, Diane Pimentel was decedent's mother, and she passed away shortly after the events giving rise to this action occurred.  (Compl. at ¶ 7.)  The parties do not appear to dispute that Diane Pimentel would have

standing to pursue these causes of action if she were still alive. However, because she is now deceased, defendants argue that these causes of action have been extinguished and that, furthermore, her Estate has no standing to bring these causes of action on her behalf.

According to the complaint, plaintiff Estate of Diane L. Pimentel has standing pursuant to California Code of Civil Procedure § 377.30. (Compl. at ¶ 7.) That statute provides that "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Code Civ. P. § 377.30. Nonetheless, defendants argue that a separate provision of the California Code of Civil Procedure precludes standing. *See* Cal. Code Civ. P. § 377.60.

Defendants' argument fails. As the Ninth Circuit has recognized, § 377.60 "relates to wrongful death actions." *Hayes v. County of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013); *accord Cotta v. County of Kings*, 79 F. Supp. 3d 1148, 1160 (E.D. Cal. 2015) (noting that "§ 377.60 concerns wrongful death claims, which are distinct from survival claims"), *on reconsideration in part*, No. 1:13-cv-00359-LJO-SMS, 2015 WL 521358 (E.D. Cal. Feb. 9, 2015), *aff'd in part, rev'd in part on other grounds*, 686 Fed. App'x 467 (9th Cir. 2017). The Law Review Commission Comment to § 377.60 confirms this reading, noting that "[u]nlike other provisions of this chapter that relate to causes of action belonging to the decedent, this article relates to a cause of action for the decedent's wrongful death[.]" Here, however, neither the fourth nor fifth causes of action are for wrongful death. Thus, § 377.60 would appear to have no applicability to the question of whether plaintiff Estate of Diane L. Pimentel has standing to pursue those causes of action, which assert violations of the rights of familial association, companionship, and society under the First and Fourteenth Amendments to the U.S. Constitution. "The ability to vindicate one's own federal constitutional right to familial association is dependent upon the requirements of § 1983, it is not dependent on state law." *Palmer v. Vasquez*, No. 1:13-cv-01400-AWI-JLT, 2015 WL 5021666, at *7 (E.D. Cal. Aug. 17, 2015) (rejecting defendants' argument that certain plaintiffs lacked standing to bring causes of action for familial association under the U.S. Constitution and finding that "because [plaintiffs] are alleging

8

violations of their own federal constitutional rights, § 377.60 has no application"), *aff'd*, 696 Fed. App'x 782 (9th Cir. 2017). Section 377.60 provides no basis to grant judgment in defendants' favor on the causes of action alleged by plaintiff Estate of Diane L. Pimentel.

### 3. Judgment on Certain Plaintiffs' First Amendment Claims for Lack of Standing

Finally, the court addresses whether certain plaintiffs lack standing with respect to their First Amendment familial association claims. Defendants contend that plaintiff Maria Pilar Rivera (decedent's girlfriend), plaintiff Summer Pimentel (decedent's sister), plaintiff Matthew Pimentel (decedent's brother), plaintiff Travis Pimentel (decedent's brother), and plaintiff Derek Pimentel (decedent's brother) all lack standing to bring familial association claims under the First Amendment, because of which judgment on the pleadings should be awarded in favor of defendants. (Doc. No. 18-1 at 15–16.)

At the outset, it is important to clarify that these plaintiffs seek to assert familial association claims only under the First Amendment, not the Fourteenth Amendment's due process clause. Ninth Circuit caselaw is clear that siblings of a decedent lack standing to allege familial association claims under the due process clause. *See Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991) ("Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children."). Nonetheless, multiple district courts have distinguished *Ward* and found that claims for freedom of association under the First Amendment may be brought outside of the parent-child context. *See J.P. ex rel. Villanueva v. County of Alameda*, No. 17-CV-05679-YGR, 2018 WL 1933387, at *6 (N.D. Cal. Apr. 24, 2018) ("The County Defendants' reliance on *Ward* to argue that plaintiff fails to plead a cognizable claim for violation of association is thus misplaced as *Ward* did not address the First Amendment."); *Kaur v. City of Lodi*, No. 2:14-CV-828-GEB-AC, 2014 WL 3889976, at *7 (E.D. Cal. Aug. 7, 2014) (finding that siblings could bring a First Amendment claim against police officer defendants and explaining that "the Officer Defendants have not shown that the principle enunciated in *Ward* extends to Plaintiffs' First Amendment claims"); *Graham v. County of Los Angeles*, No. CV 10-05059 DDP EX, 2011 WL 3754749, at *2 (C.D. Cal. Aug. 25, 2011) (distinguishing *Ward* and finding that plaintiff stated a First Amendment claim over the death of

her fiancé because the relationship "was sufficiently personal and intimate to merit the protection of the First Amendment"). Recently, however, in an unpublished decision the Ninth Circuit came to the opposite conclusion. *See Mann v. City of Sacramento*, 748 F. App'x 112, 115 (9th Cir. 2018).[3] In *Mann*, the court concluded that the right of intimate association is analyzed "in the same manner regardless whether we characterize it under the First or Fourteenth Amendments." *Id.* In light of the decision in *Mann*, the decision in *Ward* governs all claims alleging a deprivation of the rights of association, companionship, and society, including claims under the First Amendment. Although unpublished, the undersigned will follow the Ninth Circuit's decision in *Mann*. Accordingly, judgment on the claims for familial association under the First Amendment brought by plaintiffs Maria Pilar Rivera, Summer Pimentel, Matthew Pimentel, Travis Pimentel, and Derek Pimentel will be granted in favor of defendants. However, plaintiffs will be granted leave to amend in the event they believe they can plead additional facts satisfying the requirements for a cognizable claim under *Ward*.

D. **Dismissal of Plaintiffs' Causes of Action Brought Under Article I, § 13 of the California Constitution**

Next, defendants seek judgment in their favor with respect to plaintiffs' sixth, seventh, and eighth causes of action. Each of these is alleged under Article I, § 13 of the California Constitution. Defendants argue that this provision does not confer a private right of action on plaintiffs. (Doc. No. 18-1 at 16.)

"The California Supreme Court has . . . not decided whether there is a private cause of action for damages under article I, section 13, which protects against unreasonable searches and seizures." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (2017). Federal district courts are presently split on this question. *Compare Silva v. San Pablo Police Dep't*, 319 F. Supp. 3d 1198, 1202–03 (N.D. Cal. 2018) ("[I]t seems likely the California courts would determine that Article I, Section 13 creates a private right of action for a damages remedy, but they have not yet decided this important issue of state law."); *Daniel v. City of Antioch*, No. C-13-

_____

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1084 MMC, 2013 U.S. Dist. LEXIS 138895, at *6 (N.D. Cal. Sept. 25, 2013) (same); *Camarillo v. City of Maywood*, No. CV 07-3469 ODW (SHX), 2008 WL 4056994, at *6 (C.D. Cal. Aug. 27, 2008); *Smith v. County of Riverside*, No. EDCV 05-512-VAP, 2006 U.S. Dist. LEXIS 98213, at *21 (C.D. Cal. May 16, 2006), *with Autotek Inc. v. County of Sacramento*, No. 2:16-cv-01093-KJM-CKD, 2017 WL 3149923, at *9 (E.D. Cal. July 25, 2017) ("California Constitution Article I section 13, upon which this claim rests, does not confer a private right of action for damages."); *Garner v. City & County of San Francisco*, No. 14-CV-05172-EDL, 2016 WL 10859785, at *7 (N.D. Cal. Feb. 23, 2016) (same); *Cabral v. County of Glenn*, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009) (same); *Manning v. City of Rohnert Park*, No. C 06-03435 SBA, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007) ("Neither the plain language of the article I, section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation.").

Whether a particular provision of the California Constitution provides for a private right of action is governed by the analysis set forth in *Katzberg v. Regents of the University of California*, 29 Cal. 4th 300 (2002). *Katzberg* employs a two-step approach. First, the court must consider "whether there is evidence from which [it] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation." *Id.* at 317. In making this determination, courts look to the language and history of the provision, as well as to whether it contains guidelines, mechanisms, or procedures implying a monetary remedy. *Id.* Second, if the court finds no affirmative intent either to authorize or prohibit a private right of action, the court must undertake the "constitutional tort" analysis first laid out in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Id.* Several factors are relevant to this inquiry, including (1) whether an adequate remedy exists, (2) the extent to which a constitutional tort action would change established tort law, and (3) the nature and significance of the constitutional provision. *Id.* If these factors counsel against recognizing a private right of action, the inquiry ends. *Id.* Alternatively, if these factors favor recognizing a constitutional tort, the court must consider "special factors, . . . including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government

11

fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." *Id.*

As the above framework demonstrates, the *Katzberg* analysis is quite complex. Here, however, defendants have not briefed the issue at all, failing even to mention *Katzberg* in their motion. The district court decisions cited by defendants are neither binding nor particularly persuasive, and the court declines to delve into this analysis without appropriate briefing. *See Shen v. Albany Unified Sch. Dist.*, No. 3:17-CV-02478-JD, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018) ("Defendants have not done [*Katzberg*] justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form."). Defendants bear the burden of proof on their motion to dismiss, and have failed to carry it in this regard. *Welchen v. County of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, at *10 (E.D. Cal. Oct. 11, 2016); *Sevey v. Soliz*, No. C 10-3677 LHK PR, 2011 WL 2633826, at *3 (N.D. Cal. July 5, 2011). Accordingly, the undersigned declines to grant judgment in favor of defendants as to these claims.

**E.       Judgment as to Certain Plaintiffs' Bane Act Claims**

Next, defendants argue that certain plaintiffs lack standing to assert Bane Act claims because those plaintiffs were not themselves the subject of violence or threats. (Doc. No. 18-1 at 17–18.) On this basis, defendants urge the court to grant judgment on the pleadings in favor of defendants as to these plaintiffs' Bane Act claims with prejudice.

The California Court of Appeals had occasion to address the question of whether an individual has standing to assert a Bane Act claim even though they were not themselves harmed or threatened. *See Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) [hereinafter *BART*]. In *BART*, a 19-year-old black man was shot and killed by a white police officer employed by BART. *Id.* at 142. The decedent's parents brought suit against BART, and in one cause of action sought "damages on their own behalf for violation *of their civil rights* under the Bane Act." *Id.* at 143 (emphasis added). While expressing sympathy for the decedent's parents, the California Court of Appeal concluded that the Bane Act "provides for a *personal* cause of action for the victim of a hate crime." *Id.* at 144. In other words, a cause of

action under the Bane Act is "limited to plaintiffs who themselves have been the subject of violence or threats." *Id.*

Under a straightforward application of the decision in *BART*, the plaintiffs other than the Estate of Nicholas A. Pimentel and Maria Pilar Rivera do not possess viable Bane Act claims. Plaintiffs effectively concede this point but argue that the court should decline to follow the decision in *BART*. First, plaintiffs argue that a California Court of Appeal decision is not binding on this court. (Doc. No. 19 at 29.) Plaintiffs are correct, as far as it goes, that only the California Supreme Court is "the final arbiter of what is state law." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017); *see also United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (holding that "'until the state's highest court has spoken on a particular point of state law, the law of the state necessarily must be regarded as unsettled'") (quoting *Hagan v. Caspari*, 50 F.3d 542, 547 (8th Cir. 1995)). That said, decisions by California Courts of Appeal are useful guideposts with respect to how the California Supreme Court might ultimately decide an issue, and should not be cast aside without good reason. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("In the absence of a controlling California Supreme Court decision, [courts] must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids."); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1036 n.5 (9th Cir. 1994) ("A state appellate court's announcement of a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."), *as amended* (Dec. 27, 1994). While plaintiffs may disagree with the decision in *BART*, they provide nothing in their opposition brief suggesting that the California Supreme Court would resolve the issue differently, and the court similarly has found nothing calling the validity of *BART* into question.

Second, plaintiffs contend that *BART* no longer applies because it relates to a prior version of the Bane Act. Plaintiffs correctly note that in 2000, and in response to a separate California Court of Appeals decision, *see Boccato v. City of Hermosa Beach*, 29 Cal. App. 4th 1797, 1809 (1994), the California Legislature amended the Bane Act and clarified that it provided plaintiffs

with a cause of action whether or not they were themselves members of a protected class.  *See*

*Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841–43 (2004) (discussing this amendment).

Thus, while the Bane Act was originally drafted as "California's response to [an] alarming

increase in hate crimes," *In re Joshua H.*, 13 Cal. App. 4th 1734, 1748 n.9 (1993), the statute no

longer requires "a plaintiff to allege the defendant acted with discriminatory animus or intent

based upon the plaintiff's membership in a protected class of persons." *Shoyoye v. County of Los

Angeles*, 203 Cal. App. 4th 947, 956 (2012); *see also Bender v. County of Los Angeles*, 217 Cal.

App. 4th 968, 977 (2013) (noting that the California Supreme Court in *Venegas* "clarified the

Bane Act is not limited to hate crimes").

   Far from demonstrating that the decision in *BART* has been superseded by statute,

however, plaintiffs' argument actually supports the opposite conclusion.  The court in *BART* did

not rule that the decedent's parents lacked standing because they were not members of a protected

class.  Instead, it held that decedent's parents could not proceed with their Bane Act claim

because standing under that statute "is limited to plaintiffs who themselves have been the subject

of violence or threats." *BART*, 38 Cal. App. 4th at 144.  This ruling was based upon language in

California Civil Code § 51.7, stating that all persons "have the right to be free from any violence,

or intimidation by threat of violence, committed against their persons[.]" Cal. Civ. Code

§ 51.7(b).  This language has not been modified since the decision in *BART*, even though (as the

court in *Venegas* recognized) other language in that same provision has been changed.  "When a

statute has been construed by the courts, and the Legislature thereafter reenacts that statute

without changing the interpretation put on that statute by the courts, the Legislature is presumed

to have been aware of, and acquiesced in, the courts' construction of that statute." *People v.

Bouzas*, 53 Cal. 3d 467, 475 (1991).  This court must assume that the Legislature was aware of

the court's interpretation of the statute in *BART*–a reasonable assumption in this case given that

the Legislature has already amended the provision in response to what it perceived to be an

erroneous interpretation by the California Court of Appeal in different case.  Because *BART* has

now stood as a published decision for well over 20 years, and because the California Legislature

/////

14

has not seen fit to modify the language at issue, the court is not persuaded by plaintiffs' argument that the decision in *BART* has been superseded by statute.

Third, plaintiffs argue that the decision in *BART* is no longer valid in light of subsequent caselaw. Plaintiffs point to several decisions rendered by both state and federal court which have permitted plaintiffs to state Bane Act claims based upon a defendant's "deliberate indifference" or "reckless disregard," and argue that these holdings are in tension with the holding in *BART*. (Doc. No. 19 at 29) (collecting cases). However, the question posed in the cases cited by plaintiffs was the appropriate legal standard for determining whether a plaintiff has stated a claim under the Bane Act. By contrast, in *BART*, as in this case, the question is whether certain plaintiffs possess standing to assert a cause of action under the relevant statute. These two inquiries derive from distinct bodies of law and are entirely separate questions. *Compare Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) ("From Article III's limitation of the judicial power to resolving Cases and Controversies, and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the irreducible constitutional minimum of standing.") (internal quotation marks omitted), *with Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that the pleading standard under Federal Rule of Civil Procedure 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (internal quotation marks omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.").

Finally, plaintiffs argue that certain language appearing in the *BART* decision has been superseded by a recent Ninth Circuit opinion. Although *BART* was addressed to the precise question of whether a decedent's parents had standing to allege a Bane Act claim, in ruling, the California Court of Appeals in that case also rejected plaintiffs' attempts to "fashion . . . liability for persons not present and not witnessing the actionable conduct." *BART*, 38 Cal. App. 4th at 144. Likening the issue to the question of bystander recovery for emotional distress, the state

appellate court in *BART* noted the potential "nightmare of trying to determine where the scope and extent of such liability would end." *Id.* at 145 (citing *Thing v. La Chusa*, 48 Cal. 3d 644 (1989)). As evidence that *BART's* holding is no longer good law, plaintiffs direct the court's attention to the decision in *Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018). In that case, the Ninth Circuit reviewed a jury verdict in plaintiffs' favor on a variety of state and civil rights claims resulting from alleged misconduct at the Los Angeles County Men's Central Jail. On appeal, the supervisorial defendants argued that they were not personally involved in the constitutional violations at issue, because of which they could not be held liable under § 1983 as a matter of law. The panel found that it was "not clear from the record" whether one of the supervisorial defendants had personally witnessed the events, but that even assuming he did not, "the jury could still have found the requisite causal connection" to hold him liable for his own action or inaction with respect to the training, supervision, or control of his subordinates. *Rodriguez*, 89 F.3d at 798–99. Plaintiffs argue that this language is contrary to *BART*'s admonition that a plaintiff asserting a cause of action under the Bane Act must have been present and witnessed the offensive conduct.

Once more, plaintiffs' argument lacks merit. The court in *BART* found that the decedent's parents lacked standing based upon the language of the statute, which California courts refer to as "statutory standing." *See, e.g.*, *Ctr. for Self-Improvement & Cmty. Dev. v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1556–57 (2009); *Brian C. v. Ginger K.*, 77 Cal. App. 4th 1198, 1206 (2000). "The prerequisites for standing to assert statutorily-based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466 (2013). However, the Ninth Circuit's comments in *Rodriguez* regarding whether the supervisory defendants could be held liable occurred in the context of the panel's discussion of claims brought under 42 U.S.C § 1983. *See Rodriguez*, 891 F.3d at 798. Plaintiffs offer no explanation as to how this language in

/////

/////

/////

16

*Rodriguez* could have any impact on the question of whether plaintiffs have standing under the Bane Act, an entirely separate statute passed by a different legislative body.[4]

In sum, absent any indication that it was wrongly decided, this court declines to depart from the holding in *BART* on this issue. Defendants' motion for judgment as to plaintiffs A.D.P., Estate of Diane L. Pimentel, Summer Pimentel, Matthew Pimentel, Travis Pimentel and Derek Pimentel's Bane Act claims will therefore be granted with leave to amend.[5]

**F.      Dismissal of Estate of Nicholas A. Pimentel's Claim for Trespass**

Defendants next seek partial judgment on the pleadings as to plaintiffs' twelfth cause of action alleging trespass. (Doc. No. 18-1 at 18–19.) Defendants argue that plaintiff Estate of Nicholas A. Pimentel fails to state a claim for relief in this regard. (*Id.*)

Defendants' motion in this regard centers on the precise timing of decedent's death. Under California Code of Civil Procedure § 377.34, "[i]n an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death." The practical effect of this rule is that "[i]n case where the victim dies quickly, there often will be no damage remedy at all[.]" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1104 (9th Cir. 2014). However, plaintiffs' complaint contains no allegation with respect to the precise timing of decedent's death. Defendants are correct that the complaint alleges that various Doe defendants made an unlawful entry into the decedent's home "following the shooting," but it does

---

[4]  In any event, this argument is unpersuasive because it is premised upon the notion that the Ninth Circuit's interpretation of California law can override the interpretation of state law by the California Court of Appeal. On the contrary, unless the court finds that the California Supreme Court would disagree with a ruling by the California Court of Appeal, this court is bound to adhere to decisions of the California Court of Appeal when interpretations of state law are at issue. *See Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) ("[F]ederal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.") (internal quotation marks omitted). As discussed above, plaintiffs have failed to demonstrate that the California Supreme Court would overrule the decision in *BART*.

[5]  The court is skeptical whether any amendment can cure the noted deficiencies in plaintiffs' Bane Act claim in light of the court's application of the holding in *BART*. Nonetheless, and out of an abundance of caution the court will dismiss this claim with leave to amend.

not necessarily follow from that allegation that decedent had already passed away at the time of the search. (Compl. at ¶ 40.) Resolution of this question necessarily requires a more developed factual record. Accordingly, defendants' motion for judgment on the pleadings as to this cause of action will be denied.

**G.      Dismissal of Maria Pilar Rivera's Claim for Wrongful Death**

Defendants next seek judgment with respect to plaintiff Maria Pilar Rivera's claim for wrongful death, arguing that she lacks standing to assert such a claim. (Doc. No. 18-1 at 19–20.) Plaintiffs concede that Maria Pilar Rivera lacks standing, and have agreed to voluntarily dismiss this claim. (Doc. No. 19 at 33.)

**H.      Dismissal of Duplicative, Superfluous, and Unnecessary Allegations**

Next, defendants take issue with paragraphs 97 through 177 of the complaint and request that the court dismiss or strike them as duplicative.[6] (Doc. No. 18-1 at 20–21.)

The court is aware of no mechanism by which it can grant judgment as to particular allegations within a complaint. Certainly, the court is empowered to grant judgment on the pleadings as to particular *claims for relief* under Federal Rule of Civil Procedure 12(c), but that provision does not provide for the disposal of particular *factual allegations*. Instead, defendants' motion is more properly characterized as a motion to strike brought under Rule 12(f). That provision permits the court, either on timely motion or *sua sponte*, to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." So construed, however, defendants' motion is untimely. A party seeking to strike material from a pleading must move to strike either prior to responding to the pleading or within 21 days after being served with the pleading. Fed. R. Civ. P. 12(f)(2). Defendants have already filed their answers to the complaint (Doc. Nos. 11–12), and service was effectuated more than 21 days prior

/////

_____

[6] Although styled as a motion for judgment on the pleadings, defendants argue here (as they do throughout their motion) that these factual allegations should be "dismissed." (Doc. No. 18-1 at 21.) Nonetheless, and because motions for judgment on the pleadings are governed by the same standards as those governing motions to dismiss, the court will construe defendants' motion as seeking judgment on the pleadings.

to the filing of this motion. Accordingly, the court denies defendants' request to dismiss certain allegations of the complaint as untimely.

## I.      Plaintiffs' *Monell* Claims

Finally, the court addresses defendants' argument that plaintiffs have failed to state a municipal liability claim. (Doc. No. 18-1 at 21–25.) Defendants contend that this allegation, brought on a theory of *Monell* liability, fails to include sufficient factual allegations to establish a policy or custom on the part of the city. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 692; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)). A *Monell* claim can be established in one of three ways. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170. Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted)

(quoting *Connick*, 563 U.S. at 61). "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

Broadly speaking, defendants here advance two arguments in support of their motion for judgment on the pleadings with respect to plaintiffs' *Monell* claims. Each is addressed below.

    1.  <u>Whether Plaintiffs Have Included a Sufficient Factual Allegations In Their Complaint</u>

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."); *Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (dismissing the plaintiff's *Monell* claim because it alleged only a single encounter between plaintiff and jail staff). Although "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. County of Merced*, No. 1:16-cv-01682-LJO-SAB, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7, 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 Fed. App'x 859 (9th Cir. 2017); *see also Becker v. Sherman*, No. 1:16-cv-0828-AWI-MJS (PC), 2017 WL 6316836, at *9 (E.D. Cal. Dec. 11, 2017) (finding that "four assaults related to [plaintiff's] housing assignment and status as a transgender inmate . . . sufficiently alleged the existence of a CDCR custom"), *findings and recommendations adopted*, 2018 WL 623617 (E.D. Cal. Jan. 30, 2018); *Bagley v. City of Sunnyvale*, No. 16-CV-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where

courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations.").

As examples of previous incidents involving excessive use of force by Ceres Police Department employees, plaintiffs point to numerous cases in which defendants have either settled § 1983 lawsuits or such litigation remains ongoing. (*See* Compl. at ¶ 45.) All of these cases appear to involve allegations of excessive use of force. These include, but are not limited to: (1) settlement of claims alleging that officers shot an unarmed fleeing man in the shoulder and lower back; (2) settlement of claims alleging that officers unlawfully entered a residence, whereupon they repeatedly struck, battered, and assaulted multiple occupants; and (3) a $312,500 settlement resolving claims alleging that an officer falsely arrested and then broke the arm of a woman by slamming her against a patrol vehicle while handcuffed. (*Id.*) Whether these previous cases are all manifestations of the same policy or custom, and whether that policy or custom was the moving force behind the incidents giving rise to this action, are factual matters to be determined following discovery. *See J.M. ex rel. Rodriguez v. County of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *6 (E.D. Cal. Nov. 7, 2018). The undersigned is satisfied that plaintiffs' complaint includes sufficient factual allegations in this regard to plausibly allege the existence of a policy or custom pursuant to *Monell*.

2. Whether the Complaint Contains Sufficient Allegations Against Defendant Smith

The court next addresses defendants' argument that "[p]laintiffs' *Monell* claim based upon supervisory liability fails to state a claim upon which relief may be granted and Chief Brent Smith is entitled to dismissal of this claim[.]" (Doc. No. 18-1 at 25.)

Defendants appear to misapprehend the nature of plaintiffs' claim against defendant Smith. As the complaint makes clear, defendant Smith is being sued in his individual capacity. (Compl. at ¶ 15.) Thus, unlike claims against supervisors in their official capacity, the claim against defendant Smith is not a *Monell* claim at all. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55). Nonetheless, as noted above, plaintiffs' complaint contains insufficient factual allegations against

defendant Smith to state a claim for relief. Accordingly, judgment as to all claims against defendant Smith will be granted with leave to amend.

## CONCLUSION

For all the reasons set forth above,

1. Defendant's motion for judgment on the pleadings (Doc. No. 18) is granted in part and denied in part, as follows:

   a. Judgment is granted with respect to all causes of action against defendant Smith with leave to amend;

   b. Judgment is granted on the fifth cause of action for violation of the right to association, companionship, and society as to plaintiffs Maria Pilar Rivera, Summer Pimentel, Matthew Pimentel, Travis Pimentel, and Derek Pimentel with leave to amend;

   c. Judgment is granted on the ninth cause of action under the Bane Act as to plaintiffs A.D.P., Estate of Diane L. Pimentel, Summer Pimentel, Matthew Pimentel, Travis Pimentel and Derek Pimentel with leave to amend; and

   d. Defendants' motion is denied in all other respects.

2. Within twenty-one days from the date of services of this order, plaintiffs are directed either to file an amended complaint or file a notice with the court of their intent to proceed only on those claims found in this order to be cognizable.

IT IS SO ORDERED.

Dated: __June 24, 2019__                    _____
                                             Dale A. Drozd
                                             UNITED STATES DISTRICT JUDGE

22